UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

* * * * * * * * * * * * * * * * * * *

Beverly Jean Dwelly and
Michael Dwelly,

Plaintiffs,

vs. ORDER

Yamaha Motor Corporation, USA
Yamaha Motor Company, Ltd., and
Yamaha Motor Manufacturing
Corporation of America

Defendants. Civ. No. 01-1137 (DWF/RLE)

* * * * * * * * * * * * * * * * * * *

At Duluth, in the District of Minnesota, this 3rd day of April, 2003.

## I. Introduction

This matter came before the undersigned United States Magistrate Judge pursuant to a general assignment, made in accordance with the provisions of Title 28 U.S.C. §636(b)(1)(A), upon the Plaintiffs' Motion to Compel Production of a Corporate Witness in the United States. Specifically, the Plaintiffs requested an Order which would compel the Defendants to produce a corporate witness, who works and resides in Japan, for a Rule 30(b)(6) deposition to be taken in the United States. A Hearing on the Motion was conducted on March 13, 2003, at which time, the Plaintiffs appeared by Sharon L. Van Dyck, Esq., and the Defendants appeared by Cortney G.

(42)

APR 0 3 2003

Sylvester, Esq. For reasons expressed at the close of the Hearing, and briefly reiterated below, we deny the Plaintiffs' Motion.[1]

II. Factual and Procedural Background

This is a products liability action that arises out of injuries that the Plaintiff Beverly Dwelly ("Dwelly") sustained when, on July 9, 2000, she fell off the back of the Yamaha WaveRunner, on which she was a passenger. According to the Plaintiffs' Complaint, Dwelly's injuries were caused by the force of the water stream, which was generated by the WaveRunner's water impulsion jet system. The parties are now in the midst of discovery. As part of their discovery, the Plaintiffs noted the corporate depositions of the Defendants, to be held in Minneapolis, Minnesota. The Defendants designated Noboru Kobayashi ("Kobayashi"), Emory Watson ("Watson"), and Mark Speaks ("Speaks"), as their corporate representatives, and objected to both the time, and location, of the noted depositions. With some help from the Court, it was ultimately agreed that Watson and Kobayshi would be deposed in California, on October 23 and 24, 2002, and that Speaks would be deposed in Georgia, on February 19,

[1]Separately, the parties jointly requested an extension of the pretrial deadlines, but we deferred a ruling on that request until the parties had sufficient time to "meet and confer," following a ruling on the Plaintiffs' Motion to Compel, in order that they might be able to propose extended deadlines which were grounded in practical reality. Upon receipt of the parties' joint, or separate proposals, we will issue an Order on the requested deadline extensions.

2003. The Plaintiffs' Motion arises out of deficiencies they attribute to the deposition of Kobayashi.

According to the Plaintiffs, Kobayashi was designated to respond to questions about the design and testing of the Yamaha GP760 ("GP760"), which is the personal watercraft that is at issue in this action, among other topics. The Plaintiffs contend that, during the course of his deposition, it became apparent that Kobayashi could not testify on the designated topics because, although he had supervised the development of Yamaha's initial jet propulsion system, and was involved with the design of several models of watercraft, he had left the employ of the Yamaha Motor Company, Ltd. ("YMC"), in 1995, and had not been involved in the design of the GP760. The Plaintiffs complain that, in light of Kobayashi's inability to testify competently on the topics listed in their deposition notice, they requested the Defendants to produce another corporate witness, S. Tani ("Tani"), who had been identified in YMC's Interrogatory Answers, and who resides in Japan. The Plaintiffs assert that the Defendants had originally agreed to produce Tani in California, but then withdrew that agreement, and refused to produce him anywhere other than in Japan.

As a result of these events, the Plaintiffs have moved for an Order directing the Defendants to produce Tani, or some other corporate deponent, who is qualified to testify on the topics in the

deposition notice, for a deposition in the United States, at the Defendants own expense.[2] The Plaintiffs regard the deviation from the general rule, which provides that depositions be taken at the corporation's principal place of business, as warranted by the Defendants misdesignation of Kobayashi. They also claim that, because of the different discovery laws in Japan, comity, and sovereignty concerns, also promote the United States as the proper venue for the deposition.

The Defendants deny any representation that Kobayashi's testimony was either unhelpful, or nonresponsive to the Plaintiffs' deposition notice. Moreover, they emphasize that, prior to Kobayashi's deposition, they had forewarned the Plaintiffs that Kobayashi might not be able to testify to all of the designated topics, but that any other corporate deponent, who they might designate in Kobayashi's stead, would be located Japan. Further, since the Plaintiffs had noted Kobayashi's deposition, in his individual capacity, the Defendants, and presumably the Plaintiffs, felt it wise to proceed with Kobayashi's deposition in this country. The Defendants fully acknowledged that, if Kobayashi's knowledge were

[2]In their Motions papers, the Plaintiffs had specifically requested that Tani be produced but, at the time of the Hearing, the Plaintiffs clarified that they only wanted the Defendants to produce a deponent who could competently testify as to topics in their notice, and not, necessarily, Tani.

not sufficient to address each of the designated topics, then another deponent would be produced, but not necessarily in the United States.

The Defendants maintain that their approach to the Rule 30(b)(6) notices was appropriate, because the Rule allows a corporation to designate more than one person for deposition purposes. Accordingly, although the Defendants agree that they must designate another corporate deponent, they claim that there is no cause to deviate from the general rule, which would require that the deposition be taken in the location where the deponent lives and works -- here Japan -- and at the Plaintiffs' expense.

## III. Discussion

Since the resolution of where the deposition should occur, and who should bear its cost, depends, in no small part, on whether the Defendants failed to abide by the requisites of Rule 30(b)(6), our analysis starts with that issue.

### A. The Defendants' Compliance with Rule 30(b)(6).

1. Standard of Review. As here relevant, Rule 30(b)(6) provides as follows:

> A party may in the party's notice and in a subpoena name as the deponent a public or private corporation or partnership * * * and describe with reasonable particularity the maters on which examination is requested. In that event, the organization so named shall designate one or more officers, directors, or

> managing agents, or other persons who consent to testify on its behalf, and may set forth for each person designated, the matters on which the person will testify. * * * The persons so designated shall testify to matters known or reasonably available to the organization.

"[T]he effectiveness of the Rule bears heavily upon the parties' reciprocal obligations." Prokosch v. Catalina Lighting, Inc., 193 F.R.D. 633, 638 (D. Minn. 2000). Thus, the requesting party must reasonably particularize the subjects about which it wishes to inquire, and the responding party "is obligated to produce a deponent who has been suitably prepared to respond to questioning within the scope of inquiry." Id. To this end, the responding party "must make a conscientious, good-faith effort to designate knowledgeable persons for Rule 30(b)(6) depositions and to prepare them to fully and unevasively answer questions about the designated subject matter." Starlight Intern, Inc. v. Herlihy, 186 F.R.D. 626, 639 (D. Kan. 1999), citing Dravo Corp. v. Liberty Mut. Ins. Co., 164 F.R.D. 70, 75 (D. Neb. 1995).

These mutual burdens allow an inquiring party to obtain reponses to discovery from a corporation, which "can only act through its employees, directors and agents," without being "bandied, from one corporate representative to another, vainly searching for a deponent who is able to provide a response which would be binding on the corporation," while simultaneously protecting a corporation

from "a seemingly endless sequence of depositions which necessarily interfere with the capacity of its officers and employees to properly discharge their employment duties, and which imposes substantial financial costs." Prokosch v. Catalina Lighting, Inc., supra at 638, citing Advisory Committee Notes to 1970 Amendments to Rule 30(b)(6); Protective Nat. Ins. v. Commercial Ins., 137 F.R.D. 267, 278 (D. Neb. 1989), quoting Cates v. LTV Aerospace Corp., 480 F.2d 620, 624 (5th Cir. 1973). Thus, the Rule only operates effectively when the requesting party specifically designates the topics for deposition, and when the responding party produces "such number of persons as will satisfy the request," and "prepare[s] them so that they may give complete, knowledgeable and binding answers on behalf of the corporation." Marker v. Union Fidelity Life Ins. Co., 125 F.R.D. 121, 126 (M.D.N.C. 1989).

If no person exists who is able to speak, on a corporation's behalf, on all of the topics noted in the deposition, the corporation cannot avoid the deposition by such a claim, but must prepare a deponent to testify as to those matters, as "[a]ny other interpretation of the Rule would allow the responding corporation to 'sandbag' the depositional process 'by conducting a half-hearted inquiry before the deposition but a thorough and vigorous one before the trial.'" Prokosch v. Cataline Lighting, Inc., supra at 639, quoting United States v. Taylor, 166 F.R.D. 356, 361 (M.D.N.C.

1996). Further, the plain language of the Rule permits a corporation to designate more than one deponent in response to a 30(b)(6) notice. See, Rule 30(b)(6) ("[T]he organization so named shall designate **one or more**" deponents * * *.)

2. Legal Analysis. Since the Defendants have not asserted that the Plaintiffs did not reasonably particularize the subjects about which they wished to inquire, the Defendants were obligated to produce, in good faith, a knowledgeable deponent who was competently prepared to fully and responsibly address the questions posed by the Plaintiffs. Having reviewed the evidence submitted, we believe that the Defendants complied with that obligation.

The Defendants have represented that they designated Kobayashi because they believed that he could respond to most, if not all, of the topics particularized in the Plaintiffs' notice. However, because they were aware of potential limitations in his testimony, by letter dated August 17, 2002 -- well over two months prior to Kobayashi's deposition -- the Defendants informed the Plaintiffs of those limitations. In that letter, the Defendants suggested that, because "[p]ersons with direct responsibility for the GP760 model are in Japan," "it might make sense for [the Plaintiffs] to complete [their] deposition of Mr. Kobayashi" first, after which the parties could "determine whether [the Plaintiffs] believe[d] it

w[ould] be necessary to depose witnesses from overseas." Exhibit A attached to Defendants' Memorandum in Opposition to Plaintiffs' Motion to Compel. The Plaintiffs suggest that the Defendants should have prepared Kobayashi to fully testify as to all of the noted topics, but clearly, that burden of preparation is not required by the Rule, when another deponent, who does not require such preparation, may be designated as a successive deponent.

Accordingly, we find no violation of Rule 30(b)(6) and, since the Plaintiffs desired to take Kobayashi's deposition, in any event, in his individual capacity, the Defendants should not bear any onus in disclosing the potential limitations in Kobayashi's knowledge, and in agreeing to the conduct of a supplemental deposition, if that proved necessary. Had the Plaintiffs opposed such an approach, they had a sufficient amount of time to register their objection before Kobayashi was deposed. Finding no violation of Rule 30(b)(6), we conclude that the Plaintiffs should bear the expense of any supplemental Rule 30(b)(6) deposition, and we turn to a consideration of where such a supplemental deposition should occur. Cf., Arctic Cat, Inc. v. Injection Research Specialists, 210 F.R.D. 680, 682 (D. Minn. 2002)("In view of the deponent's abject inability to provide substantive answers to the questions IRS posed, however, we conclude that Arctic Cat should bear some of

IRS's costs in enduring a Rule 30(b)(6) deposition which was predestined for failure.").

B. The Venue for the Deposition.

Both parties acknowledge that the general rule requires a Rule 30(b)(6) deposition to be taken at the corporation's principal place of business. The Plaintiffs urge, however, that we deviate from the general rule, and require the Defendants to produce the supplemental deponent in the United States, even though the deponent lives in Japan, and works there as well. As argued by the Plaintiffs, since the corporation, for whom the deponent works, does business in the United States, and is subject to this Court's jurisdiction, and has the advantage of being able to use the Federal Rules of Civil Procedure to conduct their own discovery in this case, it is appropriate to compel the deponent to travel to this country for his deposition. In addition, the Plaintiffs express substantial concern that, because Japan is not a signatory to the Hague Convention, and since the discovery rules are considerably different in Japan, the deponent should be deposed here, in order to afford the Plaintiffs the broad discovery to which they are entitled under the Federal Rules of Civil Procedure, and in order to allow this Court to hear any dispute that arises during the course of the deposition.

The Defendants object to producing a deponent in the United States. They claim that their employees have significant responsibilities in Japan, and rarely travel to the United States, such that producing a deponent here would be unduly burdensome. The Defendants also maintain that the Plaintiffs' request ignores concerns over international comity, and Japanese sovereignty. The Defendants urge that, notwithstanding the Court's legitimate interest in upholding the rights of the parties to fully investigate their claims, we should not unnecessarily inconvenience a foreign national by compelling him or her to travel overseas for a deposition. In addition, the Defendants represent that they would not insist on employing the deposition procedures of Japanese law, such that the deposition would be taken in accordance with the Federal procedural rules, in order to minimize any limitations in discovery which could be imposed by adherence to the procedures of Japanese law.

Having considered the respective arguments, we conclude that the deposition of a supplemental Rule 30(b)(6) deponent should be taken in the location where the corporation, for whom the deponent testifies, is located. Our ruling would have been different, absent the Defendants' representation that they were waiving any insistence on adherence to Japanese procedures if the deposition were taken in Japan. As we related at the Hearing in this matter,

we have some concern, given the Plaintiffs' unrebutted respresentation, that the Defendants retracted an earlier agreement to allow the deposition to be taken in this country, but the Defendants have forthrightly assured that their waiver of Japanese procedures will not be unilaterally withdrawn, and we are not powerless to act if that pledge is not honored.

In so ruling, we do not suggest any disrespect for the discovery procedures allowed by Japanese law, for we have none. Rather, we adhere to our view, expressed in Minnesota Mining & Manufacturing Co., Inc. v. Nippon Carbide Industries Co., Inc., 171 F.R.D. 246 (D. Minn. 1997), quoting Societe Nationale Industrielle Aerospatiale v. United States District Court, 482 U.S. 522, 540 n. 25 (1987), that "we are keenly sensitive to the promotion of international comity, [but] we cannot ignore the fact that [the Defendants are] properly within the jurisdiction of this Court, and therefore, [are] 'subject to the same legal constraints, including the burdens associated with American judicial procedures, as their American competitors.'" The Plaintiffs are entitled to the full degree of discovery that has been allowed, under the Federal Rules, to the Defendants, but we find no basis to conclude that the discovery, to be effective, must be conducted within the territorial boundaries of this nation. Consistent with the Defendants' representations, any disagreements between the parties, during the

course of the deposition, should be drawn to the attention of this Court for a prompt resolution.

NOW, THEREFORE, It is --

ORDERED:

That the Plaintiffs' Motion to Compel Production of Corporate Witness in the United States [Docket No. 35] is DENIED.

BY THE COURT:

Raymond L. Erickson
UNITED STATES MAGISTRATE JUDGE