UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

* * * * * * * * * * * * * * * * * * *

Beverly Jean Dwelly, and Michael Dwelly,

Plaintiffs,

vs. MINUTE ORDER

Yamaha Motor Corporation, U.S.A, Yamaha Motor Company, Ltd., and Yamaha Motor Manufacturing Corporation of America,

Defendants. Civ. No. 01-1137 (DWF/RLE)

* * * * * * * * * * * * * * * * * * *

At Duluth, in the District of Minnesota, this 9th day of April, 2004.

## I. Introduction

This matter came before the undersigned United States Magistrate Judge pursuant to a general assignment, made in accordance with the provisions of Title 28 U.S.C. §636(b)(1)(A), upon the Motion of the Plaintiffs to Amend the Scheduling Order to Allow Amendment of their Complaint. A Hearing on the Motion was conducted on April 1, 2004, at which time, the Plaintiffs appeared by Sharon L. Van

Dyck, Esq., and the Defendants appeared by Cortney G. Sylvester, Esq. For reasons which follow, the Plaintiffs' Motion is denied.

## II. Factual and Procedural Background

This is a products liability action, which arises out of injuries sustained by Plaintiff Beverly Dwelly ("Dwelly") when, on July 9, 2000, she fell off the back of the Yamaha WaveRunner on which she was a passenger. According to the Plaintiffs' Complaint, Dwelly's injuries were caused by the force of the water stream created by the WaveRunner's water impulsion jet system. The Plaintiffs now seek to amend the Pretrial Schedule, so as to allow them to file a Motion to Amend their Complaint, in order to assert a claim for punitive damages. See, Minnesota Statutes Section 549.20; see also, Olson v. Snap Products, Inc., 29 F. Supp.2d 1027, 1034 (D. Minn. 1998), quoting Ulrich v. City of Crosby, 848 F. Supp. 861, 866 (D. Minn. 1994); Bunker v. Meshbesher, 147 F.3d 691, 696 (8th Cir. 1998).

In our original Scheduling Order of November 13, 2001, the deadline for any Motions to Amend the pleadings, or to add new parties, was set for February 1, 2002. See, Pretrial Schedule, at 2. Due to the joinder of other parties, the pretrial deadlines were modified, from time to time, but a request was never made, until the Motion now before the Court, to alter the pretrial deadline for the amendment of the pleadings.

Now, Plaintiffs assert that they have recently discovered evidence – namely, the existence of other suits against the Defendants – which would warrant a claim for punitive damages. In response, the Defendants advise that, as early as January 22, 2002, they produced the names and addresses of seventeen "other incidents" to the Plaintiffs. Defendants' Response to Plaintiffs' Motion to Amend, at p. 2.

The Plaintiffs were not satisfied with the Defendants' production, and subsequently, we directed the further disclosure of prior claimed injuries, upon the Plaintiffs' Motion. According to the Record presented, such additional information, as was retained by the Defendants, was produced to the Plaintiffs on September 19, 2002. In October of 2002, the Plaintiffs took the depositions of two of the Defendants' employees, and questioned them about the previously identified claims. The Plaintiffs then attempted to contact the other injured persons, in order to determine whether their circumstances paralleled those alleged by the Plaintiffs in this action. The Plaintiffs represent that their investigation was time-consuming, and that they did not complete the depositions of all of the identified persons until January 14, 2004, and the last transcript of those depositions was received "several weeks later." Plaintiffs' Memorandum in Support of their Motion to Amend, at p. 5. Thereafter, the

deposition transcripts were forwarded to the Plaintiffs' expert witnesses, before the decision was made to seek punitive damages.

The Defendants are not so persuaded, and they argue that delays in the Plaintiffs' investigation into other claims should not prejudice the Defendants' interests, or delay the commencement of the Trial. Accordingly, the Defendants oppose the Motion to Amend the Pretrial Schedule.

## III. Discussion

A. Standard of Review. Rule 15(a), Federal Rules of Civil Procedure, provides:

> [A] party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires.

In construing this Rule, the Supreme Court has observed:

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reasons -- such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. -- the leave sought should, as the rules require, be "freely given."

Foman v. Davis, 371 U.S. 178, 182 (1962); see also, Thompson-El v. Jones, 876 F.2d 66, 67 (8th Cir. 1989).

However, where, as here, the deadline for the amendment of pleadings has expired, the propriety of the Motion for leave to amend "is most properly considered within the framework of Rule 16(b), Federal Rules of Civil Procedure." Alholm v. American S.S. Co., 167 F.R.D. 75, 77 (D. Minn. 1996). The requirements of Rule 16(b), Federal Rules of Civil Procedure, have been described as follows:

> Rule 16(b), Federal Rules of Civil Procedure, provides that a Scheduling Order "shall not be modified except upon a showing of good cause and by leave of the district judge or, when authorized by local rule, by a magistrate judge." The "good cause" standard is an exacting one, for it demands a demonstration that the existing schedule "cannot reasonably be met despite the diligence of the party seeking the extension." Rule 16(b), Federal Rules of Civil Procedure, Advisory Committee Notes -- 1983 Amendment; see also, Julian v. Equifax Check Services, Inc., 178 F.R.D. 10, 16 (D. Conn. 1998). It hardly bears mentioning therefore, that "carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief." Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 609 (9th Cir. 1992). Nor does the question of good cause turn on the existence or absence of prejudice to the non-moving party. Luigino's Inc. v. Pezrow Cos., [178 F.R.D. 523], at 525 [(D. Minn. 1998)].

Scheidecker v. Arvig Enterprises, Inc., 193 F.R.D. 630, 631 (D. Minn. 2000), quoting Archer Daniels Midland v. Aon Risk Services, Inc., 187 F.R.D. 578, 581-582 (D. Minn. 1999).[1]

The Eighth Circuit has reiterated that Rule 16(b) provides the appropriate standard as to Motions to Amend that arise after the deadline for such motions has expired, by stating:

> It is true that the Federal Rules are usually liberally construed to permit parties to amend pleadings, add additional parties and to similarly control the pace of litigation. See, e.g., Hopkins v. Saunders, 199 F.3d 968, 974 (8th Cir. 1999), cert. denied, 531 U.S. 837, 121 S.Ct. 176, 148 L.Ed.2d 121 (2000); Gray v. Bicknell, 86 F.3d 1472, 1481 (8th Cir. 1996). As regards case management orders, however, the Federal Rules set a less forgiving standard. Federal Rule of Civil Procedure 16(b) specifies that such an order "shall not be modified except upon a showing of good cause and by leave of the district judge." Thus, a moving party must first make the requisite showing. Even then the district court retains discretion as to whether to grant the motion. As a vehicle designed to streamline the flow of litigation through our crowded dockets, we do not take case management orders lightly, and will enforce them. In re Milk Prods. Antitrust Litig., 195 F.3d 430, 437 (8th Cir. 1999), cert denied sub nom. Rainy Lake One Stop,

[1]Local Rule 16.3 serves to reinforce the need for a party to show good cause, when seeking to extend the deadline for amending the pleadings. The Advisory Committee Notes to Local Rule 16.3 explain that the Rule is "* * * intended to discourage modifying pretrial schedules unless good cause has been shown." Local Rule 16.3, Advisory Committee Notes.

> Inc. v. Marigold Foods, Inc., 529 U.S. 1038, 120 S.Ct. 1534, 146 L.Ed.2d 348 (2000).

Bradford v. DANA Corp., 249 F.3d 807, 809 (8th Cir. 2001).

As was expressed, in Rouse v. Farmers State Bank of Jewell, 866 F. Supp. 1191, 1198 (N.D. Iowa 1994):

> A scheduling order is an important tool in controlling litigation. Jochims v. Isuzu Motors, Ltd., 145 F.R.D. 507, 510 (S.D. Iowa 1992). A magistrate judge's scheduling order "is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril." Gestetner Corp. v. Case Equip. Co., 108 F.R.D. 138, 141 (D. Me. 1985). Scheduling Orders have become increasingly critical to the district court's case management responsibilities because "[i]t is well known that we litigate these days under the burden of heavy caseloads and clogged court calendars." Id.

The court also observed that "the flouting of discovery deadlines causes substantial harm to the judicial system." Id., citing Geiserman v. MacDonald, 893 F.2d 787 (5th Cir. 1990). Accordingly, "[w]e doubt that it can be seriously questioned that '[a]dherence to reasonable deadlines is * * * critical to maintaining integrity in court proceedings.'" Alholm v. American S.S. Co., supra at 79, quoting Rouse v. Farmers State Bank of Jewell, supra at 1199.

B. Legal Analysis. The proffered basis for the Plaintiffs' punitive damages claim rests in their assertion that there were similar accidents, and injuries, involving

the same type of personal watercraft, of which Yamaha was aware. The Plaintiffs contend that they "have consistently moved forward to seek and track down the evidence needed to support a punitive damages claim." Plaintiffs' Memorandum in Support of their Motion to Amend, at 5. We are not so persuaded. Notwithstanding the conclusory assertion, that fully two years were expended in locating other incidents which were similar to that alleged by the Plaintiffs, we are unable to fathom how that is plausible. We can accept, as the Plaintiffs complain, that the records retention policies of the Defendants hindered their search, but we are not persuaded that a concentrated, and early effort to identify similar cases, and locate witnesses, could not have been accomplished well prior to the depositions upon which the Plaintiffs rely.

We understand that the Plaintiffs have an obligation to show, by clear and convincing evidence, that they have an entitlement to plead a punitive damage claim, but the proof need not consist of depositions, as the entitlement arises from a prima facie showing, not one that will withstand Summary Judgment. Moreover, even if we were to accept that the Plaintiffs' election to rely upon completed depositions, which had to be transcribed and submitted to their experts prior to a Motion to Amend, was

an exercise in diligence, the Plaintiffs leave unexplained why an additional two months expired before their Motions papers were filed, and a Hearing date secured.

Moreover, at the time that their Motion was filed, the case had been certified as being Ready For Trial, and had been placed on a Trial Calendar for April 12, 2004. Although the Ready For Trial date has been recently extended until May 31, 2004, due to unexpected conflicts and delays, the reality remains that, when the parties should be engaging in preparation for Trial, the Plaintiffs would like to introduce an entirely new issue into the litigation. Not surprisingly, the Defendants complain that the untimeliness of the Plaintiffs' Motion prejudices them greatly. First, they assert that they had no knowledge that the case might involve a claim for punitive damages. In contrast, the Plaintiffs allege that the Defendants knew that the purpose of their requests for other accident information was to support a punitive damages claim.[2] In fact, the Defendants themselves acknowledge that the Plaintiffs originally included "deliberate disregard" language in their Complaint, which they later withdrew after being notified of Minnesota's punitive damages procedures.

---

[2]The Plaintiffs further assert that there is no surprise to the Defendants, because they have known all along of the details of the other accidents and lawsuits, and that any prejudice the Defendants suffer, in terms of access to information, is a result of their own deficient document retention policy.

Of course, the question of good cause does not turn on the existence or absence of prejudice to the non-moving party. See, North Star Mutual Ins. Co. v. Zurich Ins. Co., 269 F. Supp.2d 1140, 1143 (D. Minn. 2003), citing Luigino's Inc. v. Pezrow Cos., 178 F.R.D. 523, 525 (D. Minn. 1998). In sum, we find that the Plaintiffs have failed to satisfy the good cause showing required of them. The case is rapidly approaching a mandatory Settlement Conference, and we are unable to ignore the conjunction between a delayed effort to seek punitive damages, and the likelihood that the settlement value of the case would be enhanced, in the final hours before Trial, if the Plaintiffs were now, belatedly, allowed to plead a claim for exemplary damages. Accordingly, we deny the Plaintiffs' Motion to Amend the Scheduling Order to Allow Amendment of their Complaint.

NOW, THEREFORE, It is --

ORDERED:

That the Plaintiffs' Motion to Amend the Scheduling Order [Docket No. 58] is DENIED.

BY THE COURT:

s/ Raymond L. Erickson

Raymond L. Erickson
UNITED STATES MAGISTRATE JUDGE